## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

Best Bee Brothers, LLC

       Plaintiff,

   v.                                        **Case No. 2:25-cv-365**

Brian Blazer d/b/a Carpenter Bee Solutions,

       Defendant,

---

## COMPLAINT

---

Plaintiff Best Bee Brothers, LLC ("Plaintiff"), for its complaint against defendant Brian Blazer d/b/a Carpenter Bee Solutions ("Defendant"), alleges as follows:

### Parties

1. Plaintiff Best Bee Brothers, LLC is a Wisconsin company with its principal place of business at 12745 W. Townsend St., Brookfield, Wisconsin 53005. Among other things, Plaintiff is engaged in the business of designing and selling carpenter bee traps.

2. Defendant Brian Blazer is a sole proprietorship owned and operated by Brian Robert Blazer with a principal place of business located in Cleburne County at 230 County Road 880, Heflin, Alabama 36264.

### Nature of Action

3. This is an action for (i) declaratory judgment pursuant to the Declaratory Judgement Act, 28 U.S.C. §§ 2201-2202, that Defendant's purported trade dress is invalid and unenforceable pursuant to 15 U.S.C. § 1051 et seq.; (ii) fraudulent inducement to contract; (iii) breach of contract; and (iv) tortious interference with contract.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 1338(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and pursuant to agreement of the Parties.

## BACKGROUND

6.      Plaintiff and Defendant have a long history with one another dating back to about 2015, at which time Defendant approached Plaintiff about a potential business relationship whereby Plaintiff would manufacture carpenter bee traps under a license to Defendant's patent, U.S. Patent 8,375,624 ("the '624 patent").

7.      In and around October 2015, Plaintiff and Defendant entered into a "temporary" license agreement under which Defendant sold carpenter bee traps and paid a 15% royalty to Plaintiff.

8.      Below is an image of Plaintiff's original carpenter bee trap design sold under the temporary license:



9. After entering into the temporary license with Defendant, Plaintiff redesigned its carpenter bee trap. The parties discussed the possibility of a new license but could not come to agreement.

10. Defendant subsequently sued Plaintiff for patent infringement on March 25, 2020 in this District in the case captioned *Brian Robert Blazer d/b/a Carpenter Bee Solutions v. Best Bee Brothers LLC et al.*, Case No. 2:20-cv-480-BHL ("the Patent Infringement Action"), alleging infringement of the '624 patent and U.S. Patent RE46,421, which is a reissue of the '624 patent.

11. The parties resolved the dispute by entering into a Confidential Settlement Agreement ("the Agreement") dated April 18, 2023, under which Plaintiff agreed to pay royalties on the below designs that were the subject of the lawsuit, with the "Best Bee Trap" at left and the "Pine Wood Box Carpenter Bee Trap" at right. The Agreement refers to these as the "OLD" designs. A copy of the Agreement is attached as Exhibit A.



OLD Best Bee Trap

OLD Pine Wood Box Carpenter Bee Trap

12.     Defendant also granted a covenant not to sue for the below designs of the Best Carpenter Bee Trap (left) and Pine Wood Carpenter Box Bee Trap (right) for infringement of Defendant's patents, which the Agreement refers to as the "NEW" designs.



NEW Best Bee Trap

NEW Pine Wood Box Carpenter Bee Trap

13.     Defendant, via the Agreement, gave Plaintiff permission to sell the NEW Best Bee Trap and the NEW Pine Wood Carpenter Bee Trap.  Importantly, the Agreement makes no mention of any purported trade dress rights relating to the configuration of the respective products, nor does the Agreement contain any other provisions pertaining to how purported trade dress rights should be used.

14.     About four months after the parties entered into the Agreement, and Plaintiff had begun paying royalties to Defendant, Defendant filed an application with the United States Patent and Trademark Office on August 30, 2023 seeking a registration to protect purported trade dress rights in the design of a "trapezoidal-shaped" insect trap.  The USPTO issued U.S. Registration 7,657,825 on January 21, 2025 for the below design, a copy of which is attached as Exhibit B:



15.     On October 3, 2023, more than a month after Defendant filed the above

application for trade dress relating to a "trapezoidal-shaped" design for an insect trap, Plaintiff

and Defendant entered into a second agreement ("the Trademark Agreement") resolving a

dispute between the parties relating to the BEST BEE TRAP mark.  Defendant did not raise any

issues relating to trade dress when the parties negotiated the Trademark Agreement, nor does the

Trademark Agreement address any trade dress issues.  A copy of the Trademark Agreement is

attached as Exhibit C.

16.     Defendant filed a second application with the United States Patent and Trademark

Office on November 21, 2023 seeking a registration to protect purported trade dress rights in the

design of a "rectangular-shaped" insect trap. The USPTO issued U.S. Registration 7,684,417 on

February 11, 2025 for the below design, a copy of which is attached as Exhibit D:



17.     Having secured the above registrations for Defendant's purported trade dress, on or about March 6, 2025, Defendant initiated complaints for several of Plaintiff's listings on Amazon alleging trade dress infringement with respect to certain of Plaintiff's carpenter bee traps that embody the "trapezoidal-shaped" and "rectangular-shaped" designs as reflected in the NEW designs referenced in the Agreement.

18.     As a result, Plaintiff's listings on Amazon have been, and currently remain, suspended, including, but not limited to, the following ASINs: B0CBNDZQSK Pine Turbo Trap 2 Pack; B0DVBNZCNC Ultimate Pro 12 Pack; B0CBNDLDPW Pine Turbo 6 Pack; B0DY452C6B Ultimate Trap 2 Pack; B0DVBTMDVX Ultimate Pro 6 Pack; B0CBNGGMCY Pine Turbo 1 Pack; B0DP27BKY5 Ultimate Pro 2 Pack.

19.     Plaintiff's Ultimate Pro design is shown below, which features the same "trapezoidal-shaped" design of the NEW Best Bee Trap and OLD Best Bee Trap identified in the Agreement.



Ultimate Pro

20. Plaintiff's Pine Turbo Trap is shown below, which features the same "rectangular-shaped" design of the NEW Pine Wood Box Carpenter Bee Trap and OLD Pine Wood Box Carpenter Bee Trap identified in the Agreement.



Pine Turbo Trap

21. On or about March 6, 2025, Defendant also filed complaints with Walmart alleging trade dress infringement with respect to Plaintiff's Turbo Trap 2.0 carpenter bee trap,

which is the NEW Best Bee Trap referenced in the Agreement. The Turbo Trap 2.0 carpenter

bee trap is shown below:



22.     As a result, Plaintiff's listings on Walmart have been, and currently remain,

suspended, including, but not limited to, the following listings:

https://www.walmart.com/ip/Best-Bee-Brothers-Carpenter-Bee-Turbo-Trap-2-0-with-Bee-Vault-and-Designer-White-Roof-1-Count/3669207438
https://www.walmart.com/ip/Best-Bee-Brothers-Carpenter-Bee-Turbo-Trap-2-0-with-Bee-Vault-and-Designer-Black-Roof-1-Count/2756322805
https://www.walmart.com/ip/Best-Bee-Brothers-Carpenter-Bee-Turbo-Trap-2-0-with-Bee-Vault-2-Outdoor-Black-Roof-Trap-Pair/2215901302
https://www.walmart.com/ip/Best-Bee-Brothers-Turbo-Trap-2-0-with-Bee-Vault-Outdoor-1-Door-Carpenter-Bees-Trap-2-Count-Brown-Roof/3335556085
https://www.walmart.com/ip/Turbo-Trap-with-Designer-Brown-Roof-for-Catching-Carpenter-Bees-by-Best-Bee-Brothers/3368829946
https://www.walmart.com/ip/Best-Bee-Brothers-Carpenter-Bee-Trap-Turbo-2-0-with-Bee-Vault-2-Pack-and-Designer-White-Roof/3157836448
https://www.walmart.com/ip/Best-Bee-Brothers-Turbo-Trap-2-0-with-Bee-Vault-6-Pack-for-Carpenter-Bees-Trap/2933522468
https://www.walmart.com/ip/Best-Bee-Brothers-Turbo-Trap-Outdoor-Carpenter-Catcher-with-Bee-Vault-2-Pack/3089890540

23.     Defendant's actions in asserting trade dress infringement claims to Amazon and

Walmart, causing the delisting of Plaintiff's above products, has caused and continues to cause

significant and irreparable harm to Plaintiff. Plaintiff is unable to sell its traps on Amazon and Walmart, which are important marketplaces for Plaintiff. Further, spring is the most important selling season for carpenter bee traps, and Defendant has crippled Plaintiff's ability to sell traps during this most important time of year. Plaintiff has lost and continues to lose sales and market share by the day.

24.     Plaintiff is entitled to preliminary injunctive relief directing Defendant to immediately withdraw his complaints with Amazon and Walmart and to reinstate Plaintiff's listings.

**COUNT I – DECLARATORY JUDGMENT THAT DEFENDANT'S PURPORTED TRADE DRESS RIGHTS ARE INVALID AND UNENFORCEABLE**

25.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

26.     Defendant's purported trade dress is invalid and unenforceable for at least the following reasons: (i) Defendant engaged in naked licensing; (ii) Defendant committed fraud on the USPTO to secure the trade dress registrations; (iii) Defendant's trade dress infringement claim is barred by laches; (iv) Defendant's trade dress infringement claim is barred by equitable estoppel; (v) Defendant's trade dress infringement claim is barred by acquiescence; (vi) Defendant's purported trade dress is functional and therefore does not constitute protectable trade dress; and (vii) Defendant has failed to establish acquired distinctiveness for his purported trade dress.

27.     As a result of the acts described herein, such as Defendant's complaints with Amazon and Walmart asserting that Plaintiff's carpenter bee traps infringe Defendant's

purported trade dress rights, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### *Naked Licensing*

28.     At least as early as April 18, 2023, Defendant was aware of and allowed Plaintiff to sell carpenter bee traps having the "trapezoidal-shaped" design and the "rectangular-shaped" design, designs that Defendant now asserts infringe purported trade dress rights in those designs and that are the respective subjects of U.S. Registrations 7,684,417 and 7,657,825.

29.     Despite Defendant's knowledge of these designs, Defendant did not insist upon or include any provisions in the Agreement, or come to any other agreement with Plaintiff, granting Defendant decision-making authority over the quality of Plaintiff's products embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design.

30.     Plaintiffs have been selling carpenter bee traps embodying the "trapezoidal-shaped" and "rectangular-shaped" designs since at least as early April 18, 2023, of which Defendant has had full knowledge.

31.     Defendant's purported trade dress rights and its U.S. Registrations 7,684,417 and 7,657,825 are invalid, unenforceable, and abandoned because Defendant has engaged in naked licensing.

### *Fraud on the USPTO – U.S. Registration 7,657,825*

32.      On August 30, 2023, Defendant filed Application Serial No. 98158401 directed to the "trapezoidal-shaped" design of a carpenter bee trap, which was four months after Plaintiff and Defendant entered into the Agreement.

33.     As part of that application, Defendant submitted a declaration, under the penalties set forth in 18 U.S.C. § 1001, falsely averring that "[t]o the best of the signatory's knowledge

and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

34.     However, at the time that Defendant submitted this Declaration, Defendant knew that Plaintiff was selling carpenter bee traps embodying the "trapezoidal-shaped" design, which Defendant had expressly authorized Plaintiff to do, without any quality control provisions or other limitations.

35.     Defendant's representation to the USPTO that "no other persons… have the right to use the mark in commerce" was false, as Defendant had expressly authorized Plaintiff to sell carpenter bee traps embodying the "trapezoidal-shaped" design, without any quality control provisions or other limitations, and Defendant knew this representation was false.  Thus, at the time Defendant submitted his declaration, Defendant had not maintained exclusivity with respect to the "trapezoidal-shaped" design and Defendant knew this.

36.     Defendant's representations to the USPTO regarding his exclusive use of the "trapezoidal-shaped" trade dress were material to the examination of Defendant's application. Defendant would not have secured a registration for the "trapezoidal-shaped" design had Defendant disclosed that he did not have exclusive use of the "trapezoidal-shaped" design with respect to insect traps.

37.     Upon information and belief, Defendant intended to deceive the USPTO so that Defendant could secure a trademark registration and wrongfully assert it against Plaintiff after expiration of the Agreement.

38.     Defendant's U.S. Registration 7,657,825 is unenforceable because Defendant engaged in fraud on the USPTO to secure the registration.

### *Fraud on the USPTO – U.S. Registration 7,684,417*

39.     On November 11, 2023, Defendant filed Application Serial No. 98279671 directed to the "rectangular-shaped" design of a carpenter bee trap, which was nearly seven months after Plaintiff and Defendant entered into the Agreement.

40.     As part of that application, Defendant submitted a declaration, under the penalties set forth in 18 U.S.C. § 1001, falsely averring that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

41.     However, at the time that Defendant submitted this Declaration, Defendant knew that Plaintiff was selling carpenter bee traps embodying the "rectangular-shaped" design, which Defendant had expressly authorized Plaintiff to do, without any quality control provisions or other limitations.

42.     Defendant's representation to the USPTO that "no other persons… have the right to use the mark in commerce" was false, as Defendant had expressly authorized Plaintiff to sell carpenter bee traps embodying the "rectangular-shaped" design, without any quality control provisions or other limitations, and Defendant knew this representation was false.  Thus, at the time Defendant submitted his declaration, Defendant had not maintained exclusivity with respect to the "rectangular-shaped" design and Defendant knew this.

43. Defendant's representations to the USPTO regarding his exclusive use of the "trapezoidal-shaped" trade dress were material to the examination of Defendant's application. Defendant would not have secured a registration for the "rectangular-shaped" design had Defendant disclosed that he did not have exclusive use of the "rectangular-shaped" design with respect to insect traps.

44. Upon information and belief, Defendant intended to deceive the USPTO so that Defendant could secure a trademark registration and wrongfully assert it against Plaintiff after expiration of the Agreement.

45. Defendant's U.S. Registration 7,684,417 is unenforceable because Defendant engaged in fraud on the USPTO to secure the registration.

*Laches*

46. Defendant has known that Plaintiff has been selling carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design since at least as early as March 25, 2020, which is when Defendant filed the Patent Infringement Action against Plaintiff.

47. In fact, Defendant pleaded in his complaint in the Patent Infringement Action that Plaintiff "continued to sell [Defendant's] patented bee traps without authorization after October 1, 2017." Accordingly, upon information and belief, Defendant has known that Plaintiff has been selling carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design since at least as early as October 1, 2017.

48. Despite this knowledge, Defendant did not bring a claim for trade dress infringement regarding the "trapezoidal-shaped" design or the "rectangular-shaped" design in the Patent Infringement Action.

49. Instead, even though Defendant sued Plaintiff and raised other claims relating Plaintiff's bee traps that embody the "trapezoidal-shaped" design or the "rectangular-shaped" design, Plaintiff waited for more than seven years to bring trade dress infringement allegations relating to those designs.

50. Defendant further negotiated and entered into the Trademark Agreement with Plaintiff and did not raise any issues relating to Plaintiff's bee traps that embody the "trapezoidal-shaped" design or the "rectangular-shaped" design.

51. Defendant's delay of at least seven years in bringing a trade dress infringement claim is unreasonable. Defendant had every opportunity to raise this claim, particularly when Defendant sued Plaintiff in the Patent Infringement Lawsuit.

52. Plaintiff will be prejudiced should Defendant be allowed to proceed with trade dress infringement claims for the "trapezoidal-shaped" design and the "rectangular-shaped" design. Due to Defendant's inaction regarding its purported trade dress rights in the designs, Plaintiff has expended substantial time and resources designing its carpenter bee traps and has substantial inventory embodying the "trapezoidal-shaped" and "rectangular-shaped" designs.

53. Defendant's trade dress infringement claims are barred by the doctrine of laches.

### *Equitable Estoppel*

54. In the Agreement, Defendant gave Plaintiff permission to sell carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design, without any quality control provisions or other limitations.

55. Defendant has now accused those designs of infringing Defendant's purported trade dress rights, rendering Defendant's prior permission to sell those designs, as reflected in the Agreement, a misrepresentation to Plaintiff.

56.     Plaintiff reasonably relied on the fact that Defendant, via the Agreement, had granted Plaintiff permission to sell carpenter traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design.  Defendant made no mention of any purported trade dress rights in those designs during the Patent Infringement Action, or during negotiations leading up to the Agreement.  Plaintiff reasonably believed that Defendant had no issue with the "trapezoidal-shaped" and the "rectangular-shaped" design embodied in Plaintiff's carpenter bee trap.

57.     Plaintiff reasonably relied upon Defendant's misrepresentation to Plaintiff's detriment.  Defendant has filed trade dress infringement claims with Amazon and Walmart, causing several of Plaintiff's product listings to become delisted.  Accordingly, Plaintiff is losing sales and market share every day during this critical selling season (Spring).

58.     Further, Defendant failed to raise any issue with the "trapezoidal-shaped" and the "rectangular-shaped" design embodied in Plaintiff's carpenter bee traps when the parties subsequently negotiated and entered into the Trademark Agreement.

59.      Defendant's trade dress infringement claims are barred by the doctrine of equitable estoppel.

### *Acquiescence*

60.     In the Agreement, Defendant gave Plaintiff permission to sell carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design, without any quality control provisions or other limitations.

61.     Defendant, through his own words and conduct, conveyed consent for Plaintiff to use the "trapezoidal-shaped" design and the "rectangular-shaped" design.

62.     Defendant's trade dress infringement claims are barred by the doctrine of acquiescence.

### Invalidity based upon functional design

63.     Both the "trapezoidal-shaped" design and the "rectangular-shaped" design are functional and therefore do not constitute protectable trade dress.

64.     For example, these designs are the subject of Defendant's utility patents, U.S. Patents 8,375,624 and RE46,4241.

65.     Defendant's purported trade dress rights and its U.S. Registrations 7,684,417 and 7,657,825 are invalid because they are directed to functional designs.

### Invalidity based upon lack of inherent distinctiveness or acquired distinctiveness

66.     Defendant has failed to establish that the "trapezoidal-shaped" design and the "rectangular-shaped" design are either inherently distinct or have acquired distinctiveness.

67.     Defendant's purported trade dress rights and its U.S. Registrations 7,684,417 and 7,657,825 are invalid because they lack distinctiveness.


## COUNT II – FRAUDULENT INDUCEMENT OF CONTRACT (WI LAW)

68.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

69.     During the negotiations leading to the Agreement, Defendant made a misrepresentation to Plaintiff when Defendant authorized Plaintiff to sell carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design, without any quality control provisions or other limitations.

70. Plaintiff reasonably relied upon this representation, including Defendant's express authorization to sell carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design without any quality control provisions or other limitations.

71. Defendant's misrepresentations regarding his purported trade dress rights in the "trapezoidal-shaped" design and the "rectangular-shaped" were material to the negotiations.

72. Plaintiff would not have entered into the Agreement had they known that Defendant would later bring trade dress infringement claims for the "trapezoidal-shaped" design and the "rectangular-shaped" of the carpenter bee traps that were the subject of the Agreement.

73. Defendant fraudulently induced Plaintiff to enter into the Agreement, under which Plaintiff paid Defendant substantial sums of money, only for Defendant to bring trade dress infringement claims for the very designs that were the subject of the Agreement after Plaintiff had satisfied its financial obligations under the Agreement.

**COUNT III – BREACH OF CONTRACT (WI LAW)**

74. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

75. Plaintiff has performed all of its obligations under the Agreement.

76. Defendant has breached the Agreement by bringing trade dress infringement claims to Amazon. For example, in paragraph 8 of the Agreement, Defendant agreed that it would allow sales of carpenter bee traps embodying the "trapezoidal-shaped" design and the "rectangular-shaped" design through Amazon. Notably, Defendant's registrations provide dates of first use from 2009 and 2010, more than a decade before the Agreement was executed.

77. Paragraph 8 precludes Defendant from bring a complaint to remove Plaintiff's carpenter bee traps from Amazon unless the complaint is based on a "future claim" of infringement of Defendant's "other intellectual property rights."

78. Defendant's trade dress infringement claim is not a "future claim" as contemplated by the Agreement, as Defendant's trade dress infringement claims existed when the parties negotiated and entered into the Agreement.

79. Plaintiff has been harmed by Defendant's breach of the Agreement.

80. Plaintiff is unable to sell its traps on Amazon, which is an important marketplace for Plaintiff.  Further, spring is the most important selling season for carpenter bee traps, and Defendant has crippled Plaintiff's ability to sell traps during this most important time of year. Plaintiff has lost and continues to lose sales and market share by the day.


**COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT (WI LAW)**

81. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

82. Plaintiff has entered into contracts with Amazon and Walmart to sell carpenter bee traps on Amazon's and Walmart's respective online marketplaces.

83. Defendant intentionally interfered with Plaintiff's business relationships and contracts with Amazon and Walmart by filing complaints with Amazon and Walmart alleging trade dress infringement.

84. Plaintiff has been directly harmed by Defendant's conduct, which resulted in the delisting of Plaintiff's carpenter bee traps on both the Amazon and Walmart online marketplaces. Plaintiff is unable to sell its traps on Amazon and Walmart, which are important marketplaces for

Plaintiff. Further, spring is the most important selling season for carpenter bee traps, and Defendant has crippled Plaintiff's ability to sell traps during this most important time of year. Plaintiff has lost and continues to lose sales and market share by the day.

85. For all of the reasons set forth above, including naked licensing, fraud on the USPTO, laches, equitable estoppel, acquiescence, and invalidity of Defendant's purported trade dress rights, Defendant had no justification and no basis to bring complaints based upon trade dress infringement to Amazon and Walmart. Further, Defendant knew it had no justification or basis to bring said complaints.

86. Defendant has tortiously interfered with Plaintiff's contracts and business relationships with Amazon and Walmart.

## Request for Relief

WHEREFORE, Plaintiff Best Bee Brothers, LLC demands that judgment be entered in its favor and against Defendant Brian Blazer d/b/a Carpenter Bee Solutions as follows:

A. Adjudging that U.S. Trademark Registrations 7,684,417 and 7,657,825 are invalid and unenforceable;

B. Adjudging that Defendant fraudulently induced Plaintiff into entering into the Agreement;

C. Adjudging that Defendant breached the Agreement;

D. Adjudging that Defendant tortiously interfered with Plaintiff's business relationships and contracts with Amazon and Walmart;

E. Entering preliminary injunctive relief directing Defendant to reinstate Plaintiff's listings with Amazon and Walmart;

F. Awarding Plaintiff its damages, together with prejudgment interest, caused by Defendant's conduct;

G.   In the alternative to damages for Defendant's breach of contract, rescinding the Agreement;

H.   Awarding punitive damages for Defendant's conduct;

I.   Awarding Plaintiff its reasonable attorneys fees and costs; and

J.   Granting such other and further relief as the Court may deem appropriate.

**Jury Demand**

Plaintiff Best Bee Brothers, LLC hereby demands a jury trial of all issues of fact not admitted by the Defendant.

Dated: March 10, 2025

s/Michael T. Griggs
Michael T. Griggs
Geoffrey J. Behr
BOYLE FREDRICKSON, S.C.
840 N. Plankinton Ave.
Milwaukee, WI  53203
Telephone:  414-225-9755
Facsimile:  414-225-9753
*Attorneys for Plaintiff Best Bee Brothers, LLC*