UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BEST BEE BROTHERS LLC,

               Plaintiff,

   v.
                                                     Case No. 25-cv-0365-bhl

BRIAN ROBERT BLAZER d/b/a
Carpenter Bee Solutions,

               Defendant.

---

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

---

      Plaintiff Best Bee Brothers, LLC claims that Defendant Brian Robert Blazer has wrongly accused it of infringing his trade dress rights in connection with the sale of rectangular- and trapezoidal-shaped carpenter bee traps. According to Best Bee Brothers, Blazer has made meritless complaints about this infringement to Amazon, leading Amazon to remove Best Bee Brothers' products from its sales platforms and causing irreparable harm at a particularly important time in Best Bee Brothers' selling season. Best Bee Brothers seeks a preliminary injunction requiring Blazer to withdraw his complaints pending a final ruling on its claims against him. The parties have submitted written evidence and have agreed that further submissions relating to the motion are unnecessary. On April 14, 2025, the Court heard in-person oral argument and took the matter under advisement. For the reasons stated below, the motion will be granted and, in lieu of a bond, Best Bee Brothers will be ordered to place in escrow all proceeds from the sale of any Best Bee Brothers products that were the subject of the enjoined complaints, or takedown notices,[1] pending further order of the Court.

---

[1] The parties refer to the takedown notices as "complaints," and, from oral argument, it appears that is the term Amazon uses as well. To avoid confusion over the term "complaint," a legal term with specific meaning, the Court will hereinafter refer to the Amazon "complaints" as takedown notices.

# FINDINGS OF FACT[2]

Plaintiff Best Bee Brothers, LLC is a Wisconsin limited liability company with its principal place of business in Brookfield, Wisconsin. (ECF No. 25 ¶1.) It is in the business of, among other things, designing and selling carpenter bee traps. (*Id.*) Defendant Brian Robert Blazer is an individual doing business as Carpenter Bee Solutions. (ECF No. 14 ¶1.) Blazer began selling trapezoidal-shaped carpenter bee traps in 2009. (*Id.* ¶¶2–3.) He began selling rectangular-shaped carpenter bee traps in 2010. (*Id.* ¶4.) His traps utilize a specific mechanism that was patented as U.S. Utility Patent No. 8,375,624 (the '624 patent) and as reissue patent RE46,421 (the '421 patent). (*Id.* ¶2.)

Best Bee Brothers' involvement with Blazer goes back a decade. (ECF No. 9 ¶4.) In 2016, the parties entered into a "temporary" license agreement under which Best Bee Brothers manufactured and sold carpenter bee traps using Blazer's patented design in exchange for a 15% royalty. (*Id.* ¶5.) The parties' relationship soon began to deteriorate. Best Bee Brothers developed a redesigned carpenter bee trap, and the parties failed to come to an agreement on a new license. (*Id.* ¶6.) Best Bee Brothers then began selling the redesigned trap without a license, and when Best Bee Brothers rejected Blazer's objections, he filed a patent infringement lawsuit in this Court. (ECF No. 14 ¶¶8–9, 11.) The Court granted summary judgment in Best Bee Brothers' favor, but the Federal Circuit reversed and remanded the case for further proceedings. *Blazer v. Best Bee Brothers LLC*, No. 20-cv-0480-bhl, 2021 WL 4552784 (E.D. Wis. Oct. 5, 2021), *vacated*, No. 2022-1033, 2022 WL 16954848 (Fed. Cir. Nov. 16, 2022). The case was then successfully mediated by Magistrate Judge Stephen C. Dries.

Following the mediation, the parties entered into a Confidential Settlement Agreement, dated April 18, 2023. (ECF No. 25-1.) The Settlement Agreement provides for Best Bee Brothers to pay Blazer guaranteed royalties on two "old" trap designs, one of which used a trapezoidal shape and the other a rectangular shape. (*Id.* at 3–4, 12–13.) The Settlement Agreement also includes a covenant by Blazer not to sue Best Bee Brothers for the sale of two traps using "new" designs. (*Id.* at 5.) The new designs also use a trapezoidal shape and a rectangular shape. (*Id.* at 14–16.) The Settlement Agreement makes no mention of trade dress rights. (*See generally id.*)

---

[2] The Court's factual findings are based on the evidence provided by the parties only for purposes of issuing a preliminary injunction. *See* Fed. R. Civ. P. 65(a).

On August 30, 2023, less than four months after the parties entered the Settlement Agreement, Blazer filed an application with the United States Patent & Trademark Office (USPTO) seeking trade dress registration for his trapezoidal-shaped insect trap. (ECF No. 10-1 at 2.) Registration was issued on January 21, 2025. (*Id.*) In his application, Blazer maintained that the mark first went into use on August 27, 2009. (*Id.* at 3.) On November 21, 2023, Blazer filed a trade dress application for his rectangular-shaped insect trap. (ECF No. 10-2 at 2.) The USPTO issued registration for this second application on February 11, 2025. (*Id.*) Blazer's application stated that his mark for the rectangular-shaped trap first went into use on February 28, 2010. (*Id.* at 3.)

On March 6, 2025, without prior notice, Blazer began sending takedown notices to Amazon, alleging that various Best Bee Brothers products sold on the Amazon website infringed his trade dress rights. (ECF No. 9 ¶13.) Amazon responded by suspending sales of the challenged products. (*Id.*) As a result, nineteen of Best Bee Brothers' products are no longer listed on Amazon. (*Id.* ¶15.) The suspension has resulted in more than 17,000 traps remaining stuck at an Amazon warehouse. (*Id.* ¶17.) Without the ability to sell these products, Best Bee Brothers must either ship the products back or pay for long-term storage. (*Id.*) Best Bee Brothers tried to contest Blazer's accusations of trade dress infringement, but Amazon responded by saying the products will not be relisted unless Blazer agrees to withdraw his allegations or Best Bee Brothers presents Amazon with a court order. (*Id.* ¶16.) Blazer has refused to withdraw his allegations. (*Id.*)

Amazon's suspension of sales of these products has implications for Best Bee Brothers' business. Carpenter bee traps are seasonal products, with the peak selling season running from March through July and 90% of Best Bee Brothers' sales on Amazon occurring during these months. (*Id.* ¶19.) For the week of March 13–19, 2025, Best Bee Brothers' sales were down 66% from the prior year. (*Id.* ¶20.) Best Bee Brothers loses sales every day these products are suspended. (*Id.* ¶21.) The suspended products also impact Best Bee Brothers' Amazon Account Health Rating, which has fallen from 1,000 (the maximum rating) to 296. (*Id.* ¶¶25, 27.) Ratings impact the searchability of all Best Bee Brothers products on Amazon, not just the suspended products; accordingly, sales on all products are down. (*Id.* ¶¶25, 27, 30.) If Best Bee Brothers' Health Rating remains low, or continues to decline, Amazon may shut down Best Bee Brothers' Amazon seller account. (*Id.* ¶31.) And the suspended products impact Best Bee Brothers' client relations: several of its clients are losing out on sales because of the suspended products. (*Id.* ¶32.)

**LEGAL CONCLUSIONS AND ANALYSIS**

Best Bee Brothers seeks a preliminary injunction[3] that enjoins Blazer from maintaining his trade dress infringement takedown notices with Amazon regarding Best Bee Brothers' carpenter bee traps; requires Blazer to affirmatively withdraw his trade dress infringement allegations with Amazon relating to Best Bee Brothers' products; and enjoins Blazer from filing any new trade dress infringement takedown notices with Amazon or any other online retailer. (ECF No. 6.)

"A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (internal quotation marks and citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right." (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008))). A district court considers four factors in weighing whether to enter a preliminary injunction. As movant, Best Bee Brothers must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. Because Best Bee Brothers has shown a very strong likelihood of prevailing on the merits, and the other factors also weigh in favor of granting injunctive relief, its motion will be granted.

**I.     Best Bee Brothers Has Demonstrated a Strong Likelihood of Success on the Merits on at Least Three of Its Affirmative Defenses.**

The first and foremost requirement for obtaining preliminary injunctive relief is demonstrating a likelihood of success on the merits. Here, Best Bee Brothers must show it is likely to succeed on its underlying declaratory judgment claim, in which it asks this Court to confirm that Blazer's purported trade dress rights are invalid and unenforceable at least with respect to Best Bee Brothers. (ECF No. 25 ¶¶31–74.)

Trade dress claims are governed by the Lanham Act, which creates a cause of action against any "person who . . . in connection with any goods or services" uses "any word, term, name, symbol, or device" that "is likely to cause confusion" as to the goods' or services' source. 15 U.S.C. § 1125(a)(1)(A). The Lanham Act applies to trademarks and to "trade dress," the design or packaging of a product that is so distinctive as to identify the manufacturer or source. *TrafFix*

---

[3] Although Best Bee Brothers' motion was initially filed as one for a temporary restraining order, (ECF No. 6), both parties have agreed that it should be treated as a preliminary injunction, (ECF No. 23 at 1).

*Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28, (2001); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–78 (1992); *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 608 (7th Cir. 1986) ("[T]rade dress is a form of trademark."). For Lanham Act purposes, trade dress refers to "the appearance of a product when that appearance is used to identify the producer." *Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998). To assert a valid trade dress claim, a party must show that: its trade dress is nonfunctional; the trade dress has acquired secondary meaning; and a likelihood of confusion exists between the trade dress of the two products. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005) (citing *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063 (7th Cir. 1992)).

Best Bee Brothers contests the validity of Blazer's trade dress rights. (ECF No. 25 ¶¶70–74.) It also asserts various affirmative defenses to any trade dress claim that might exist. (*Id.* ¶¶34–69.) Best Bee Brothers' request for an injunction focuses on four affirmative defenses: (1) Blazer engaged in naked licensing, invalidating his trade dress rights; (2) Blazer slept on his trade dress rights, giving rise to the defense of laches; (3) Blazer acquiesced to Best Bee Brothers' use of the trade dress; and (4) Blazer's purported trade dress rights are unenforceable due to fraud on the USPTO. (ECF No. 7 at 11–18.) On the evidence submitted, the Court agrees that Blazer engaged in naked licensing, slept on his trade dress rights, and acquiesced to Best Bee Brothers' use of his trade dress. The Court will not address the fourth defense. While the evidence raises serious questions about Blazer's motives and actions, it is unnecessary to delve into whether Blazer engaged in fraud on the USPTO to resolve the present motion and the Court will decline to do so.

### A. Blazer Has Likely Engaged in Naked Licensing, Invalidating His Trade Dress Infringement Claim.

A trademark owner abandons all trademark rights through uncontrolled or "naked" licensing. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997). "If a trademark owner allows licensees to depart from its quality standards, the public will be misled, and the trademark will cease to have utility as an informational device." *Id.* (quoting *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977)). For purposes of trade dress infringement, "quality" means consistent quality. *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, 639 F.3d 788, 790 (7th Cir. 2011). In other words, the licensor must exert sufficient quality control efforts to make sure the licensee's goods or services meet the expectations created by the presence of the trademark. *Id.* (citing Restatement (Third) of Unfair Competition § 33 cmt.

a (Am. L. Inst. 1995)). When the licensor has not retained any quality control—whether through a licensing agreement or some sort of performance—the licensor has engaged in naked licensing. *Id.* at 790–91.

Best Bee Brothers maintains that the Settlement Agreement allowed it to sell four bee trap designs, two "old" designs and two "new" designs, all of which utilize the rectangular and trapezoidal designs that Blazer now contends are subject to his trade dress rights. (ECF No. 7 at 13.) Best Bee Brothers also points out that Blazer never raised his alleged trade dress rights during the parties' settlement negotiations and, more importantly, did not include any quality control provisions for the traps in the parties' final agreement. (*Id.* at 13–14.) Blazer does not dispute any of these facts. According to Best Bee Brothers, these undisputed facts present a classic case of naked licensing. (*Id.*)

Best Bee Brothers cites the Seventh Circuit's decision in *Eva's Bridal*. That case involved a trademark, "Eva's Bridal," which the plaintiffs had licensed to relatives in exchange for an annual payment of $75,000. *Eva's Bridal*, 639 F.3d at 789. The agreement expired, however, and the former licensee continued to use the trademarked name without paying royalties. *Id.* Five years later, the trademark holder sued the former licensee, contending that the continued use of the "Eva's Bridal" mark without payment or a renewed license violated the Lanham Act. *Id.* In response, the former licensee invoked the doctrine of naked licensing, arguing that the trademark holder had abandoned the "Eva's Bridal" mark by not requiring the licensee to operate its store in any particular way to ensure quality and by not engaging in any supervision over how the licensee's business was conducted. *Id.* at 789–90. The district court agreed, and, on appeal, the Seventh Circuit affirmed. *Id.* at 791. The Court of Appeals rejected the trademark holder's argument that it was not required to take affirmative steps to exercise control over the quality of its former licensee's business because it was familiar with the business and had no reason to doubt the high quality of the services provided. *Id.* at 790. The Court explained that a trademark holder must affirmatively exercise control to ensure consistent quality, not high quality, and that, while the level of control necessary may be disputable, where there is a complete absence of control, through agreement or otherwise, naked licensing has occurred, and the trademark is deemed abandoned. *Id.* at 790–91.

Under *Eva's Bridal*, Best Bee Brothers has established a strong likelihood of success on its naked licensing affirmative defense. The record confirms that Blazer permitted Best Bee Brothers

to use his alleged trade dress under the Settlement Agreement without addressing quality control in the agreement or taking any other affirmative steps to make sure that quality was maintained in relation to his trade dress. It is also undisputed that Blazer agreed that Best Bee Brothers would be selling four trap designs that fell within the trade dress rights he now asserts. Indeed, these four designs, including their trapezoidal and rectangular shapes, are depicted in diagrams within the Settlement Agreement. Blazer has offered no evidence of any steps he took to monitor or otherwise supervise the quality of these traps. His actions (and inactions) in connection with the Settlement Agreement strongly support a finding that he has abandoned his trade dress rights.

Blazer attempts to distinguish *Eva's Bridal*, arguing that because the only intellectual property rights he ceded in the settlement were his patent rights, he cannot have engaged in naked licensing. (ECF No. 13 at 9.) This misunderstands naked licensing. Blazer claims he has been using this alleged trade dress since 2009 or 2010, long before the Settlement Agreement. (ECF No. 10-1 at 3; ECF No. 10-2 at 3.) Yet he agreed to allow Best Bee Brothers to sell four separate designs that embody his trade dress without any provision for quality control. That the Settlement Agreement only concerned patent infringement is irrelevant; patent rights notwithstanding, Blazer had a duty to protect the quality associated with his trade dress if he wished to assert those rights. By failing to do so, he engaged in naked licensing and abandoned his trade dress rights.

Blazer also argues that the products suspended by Amazon were not discussed in the Settlement Agreement, and thus, naked licensing does not apply to them. (ECF No. 13 at 8–9.) This too misunderstands naked licensing. As the Seventh Circuit explained, naked licensing is the equivalent of abandoning a mark. *TMT N. Am.*, 124 F.3d at 885 ("A defense of abandonment . . . result[s] in the loss of trademark rights against the world." (citations omitted)). By engaging in naked licensing, Blazer gave up the right to assert his trade dress rights against *any* product, business, or person. At oral argument, Blazer's counsel offered that because the Settlement Agreement pertained to only specific traps, and Blazer knew the quality of those traps, further efforts to ensure quality were unnecessary. This is the very argument the Seventh Circuit specifically rejected in *Eva's Bridal*. As the Court of Appeals explained, confidence in the quality of a product based on past experience with the licensor is insufficient to protect trademark rights. A holder of trade dress rights needs to exert some level of control to ensure the consistent quality of the goods offered under that trade dress. The record here includes no evidence that Blazer exercised any control over any of the four products in the Settlement Agreement. Accordingly,

the Court concludes that Best Bee Brothers has a high likelihood of succeeding on its naked licensing affirmative defense.

### B. The Facts Provided Demonstrate That Best Bee Brothers Is Likely to Succeed on Its Laches Defense.

In the trademark context, laches refers to the "negligent, unintentional failure to protect" a party's trademark rights. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (quoting *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 933 (7th Cir. 1984)). To establish laches, an alleged infringer must show that (1) the trademark owner had knowledge of the infringer's use; (2) the owner was inexcusably delayed in taking action with respect to that use; and (3) the alleged infringer would be prejudiced by allowing the owner to assert his or her rights at this time. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792–93 (7th Cir. 2002). Unlike naked licensing, a laches defense "does not divest the trademark owner of the right to use the mark but may deprive him or her of any remedy for infringing uses by others." *TMT N. Am.*, 124 F.3d at 885 (citations omitted).

Best Bee Brothers argues that it has been selling carpenter bee traps embodying the rectangular and trapezoidal designs covered by Blazer's trade dress claims since before Blazer's initial patent lawsuit in 2020. (ECF No. 7 at 16.) Given that Blazer's trade dress use dates back to 2009 and 2010, Best Bee Brothers argues that Blazer necessarily had knowledge of Best Bee Brothers' sale of the rectangular and trapezoidal bee traps by the time he sued for patent infringement in 2020. (*Id.*) Best Bee Brothers further contends that Blazer unreasonably delayed in asserting his rights by failing to raise them in his 2020 lawsuit or in connection with the parties' subsequent settlement. (*Id.* at 16–17.) It then maintains that it would be prejudiced by allowing Blazer to maintain his trade dress claim because Best Bee Brothers has invested significant time and resources into developing carpenter bee traps using Blazer's purported trade dress and, indeed, has a large inventory, 17,000 traps, covered by the trade dress now stuck at Amazon's warehouse due to Blazer's late assertion of his rights. (*Id.* at 17.) The record supports Best Bee Brothers' position and establishes that it has a strong likelihood of prevailing on its laches defense.

As to the first element, a trademark owner's knowledge of the alleged infringer's use may be actual or constructive. *Chattanoga Mfg.*, 301 F.3d at 793 (citations omitted). The evidence shows that Best Bee Brothers was using both the rectangular and trapezoidal designs by at least 2020, when Blazer sued Best Bee Brothers for patent infringement. Indeed, they were using traps

in these shapes from the beginning of their relationship with Blazer. And Blazer represented in his trade dress application that he first began using his trade dress in 2009 and 2010, (ECF No. 10-1 at 3; ECF No. 10-2 at 3), and thus, would have had actual knowledge that Best Bee Brothers' designs embodied his alleged trade dress. At oral argument,[4] Blazer's counsel argued that laches should not apply because it was unclear when Blazer's trade dress had acquired sufficient secondary meaning to achieve protected status. More specifically, counsel argued that Blazer's trade dress rights had not accrued by the time of settlement negotiations, and thus, he did not have actual knowledge of any infringement at that time. But Blazer claims he has been using his alleged trade dress since 2009 and 2010, a full decade before he sued Best Bee Brothers for patent infringement. At that time, Blazer was aware that Best Bee Brothers was selling rectangular and trapezoidal carpenter bee traps that embodied the same trade dress that he now claims as his own. And he applied for trade dress registration in late 2023, just months after finalizing his settlement with Best Bee Brothers, yet he said nothing about his trade dress rights when negotiating an end to the parties' litigation. Even if the trade dress rights took time to obtain secondary meaning, Blazer plainly had actual knowledge well before he sent the takedown notices to Amazon.

       The second laches element requires an unreasonable delay in exercising a party's trade dress rights. When determining whether a delay is unreasonable, the court should "refer[] to analogous state statutes of limitations to determine whether a presumption of laches should apply." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). In Wisconsin, claims of fraudulent business representations must be made within three years of the representation. Wis. Stat. § 100.18(11)(b)(3); *see also Chattanoga Mfg.*, 301 F.3d at 793–94 (affirming the district court's use of the Illinois Consumer Fraud and Deceptive Business Practices Act's statute of limitations when analyzing laches). Reference to the statute of limitations provides only a "baseline," however; it is not the "sole indicator" of whether laches applies. *Id.* at 821–22 (citations omitted). Best Bee Brothers argues that Blazer should have asserted his trade dress claims in 2020, when he sued for patent infringement, or by 2023, when the parties negotiated their settlement. The Court agrees that, at a minimum, the earlier date puts Blazer's takedown notices to Amazon well outside the applicable statute of limitations. Moreover, even if the date of the Settlement Agreement is used, the limitations period is not determinative, and the Court finds

---

[4] Blazer's brief includes a conclusory statement that Best Bee Brothers failed to clearly show laches but includes no case law or analysis supporting his conclusion. (*See* ECF No. 13 at 9–10.)

Blazer unreasonably delayed in exercising his rights. Blazer has offered no valid reason for his delay in asserting his claimed rights, particularly given the ongoing litigation between the parties. His conduct and associated silence suggest possible gamesmanship, which is not a reasonable basis for delay.

As to the final element of laches, Best Bee Brothers must show that Blazer's delay caused it prejudice. A delay prejudices the alleged infringer when the assertion of the claim "would be inequitable in light of the delay in bringing that claim and ensues when [an alleged infringer] has changed his position in a way that would not have occurred" absent the delay. *Chattanoga Mfg.*, 301 F.3d at 795 (citing *Hot Wax*, 191 F.3d at 824). Best Bee Brothers points to several facts indicating prejudice. First, Blazer's delay impacted the terms and negotiations of the Settlement Agreement, which would have included different terms and perhaps addressed the parties' trade dress rights and obligations, if the issue had been timely raised. Second, the delay impacted Best Bee Brothers' construction and design of future carpenter bee traps. Without knowledge of Blazer's asserted rights, Best Bee Brothers continued to invest substantial sums designing and building rectangular and trapezoidal bee traps. In fact, Best Bee Brothers has built 17,000 traps that are stuck at an Amazon warehouse, where Best Bee Brothers shipped them because it was unaware of Blazer's trade dress claims. Blazer minimizes Best Bee Brothers' prejudice, insisting that Best Bee Brothers should anticipate shipping issues as an online retailer. (*See* ECF No. 13 at 10–11.)[5] He further argues that Best Bee Brothers' decision to ship and store traps at Amazon was its own business decision. (*Id.* at 11.) Neither point refutes the evidence that Best Bee Brothers is experiencing negative consequences as a result of Blazer's delay in asserting his trade dress rights. Had Blazer brought his trade dress claims in 2020, the matter would already be settled, or it would have been brought to the fore years earlier, before Best Bee Brothers' investment of substantial resources. And, had the issue come up timely, Best Bee Brothers would not have 17,000 traps stuck at an Amazon warehouse. In sum, the Court finds that Best Bee Brothers has shown a likelihood of success on its defense of laches.

---

[5] Blazer makes this argument regarding Best Bee Brothers' acquiescence defense. (ECF No. 13 at 10–11.) Because this element is substantially the same as an element in acquiescence, the Court assumes Blazer makes this argument against Best Bee Brothers' laches defense as well.

### C. The Facts Provided Demonstrate That Blazer Acquiesced to Best Bee Brothers' Use of the Trade Dress.

Acquiescence applies in the trademark context when "the trademark owner, by affirmative word or deed, conveys its implied consent to another." *TMT N. Am.*, 124 F.3d at 885 (citations omitted). To establish the affirmative defense of acquiescence, the alleged infringer must show that (1) the trademark owner actively represented he or she would not assert a right or a claim; (2) the trademark owner's delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the alleged infringer undue prejudice. *Hyson USA*, 821 F.3d at 941 (citations omitted). Like laches, an acquiescence defense estops the trade dress owner from enjoining another's use of the mark. *TMT N. Am.*, 124 F.3d at 885 (citations omitted).

Best Bee Brothers argues that Blazer conveyed his implied consent to it selling products that were subject to his purported trade dress rights when he signed the Settlement Agreement approving Best Bee Brothers' sale of the carpenter bee traps that embody those rights. (ECF No. 7 at 15.) It argues that the nearly two-year delay between signing the Settlement Agreement and filing the takedown notices with Amazon was inexcusable. (*Id.*) And, for the reasons discussed above, Best Bee Brothers argues that the delay caused it undue prejudice. (*See id.* at 15–16.) The Court again agrees with Best Bee Brothers that it has shown a likelihood of succeeding on this defense.

First, the record confirms that Blazer agreed in the Settlement Agreement that he would allow Best Bee Brothers to sell four specific carpenter bee trap designs, all of which embodied the trade dress rights he purports to assert now. Blazer insists that he never suggested Best Bee Brothers' sale of these four designs would not violate his trade dress rights, highlighting that the Settlement Agreement makes no mention of trade dress rights. (ECF No. 13 at 10.) He contends that he made no active representation about the use of his trade dress and insists that he had no duty to raise the issue and "negotiate against himself." (*Id.*) This argument again smacks of gamesmanship and bad faith. And the law is clear that for acquiescence purposes, an affirmative action that implicitly conveys consent is sufficient. *See TMT N. Am.*, 124 F.3d at 885 (citations omitted). That Blazer's consent was implicit in the terms of the Settlement Agreement does not make acquiescence inapplicable.

As with laches, the record also supports a finding that Blazer unreasonably and inexcusably failed to timely assert his trade dress rights. He consented to the sale of the traps in the Settlement

Agreement in 2023, more than two years before he asked Amazon to takedown Best Bee Brothers' allegedly infringing traps. Blazer argues that there was no inexcusable delay in enforcing his rights because he filed the takedown notices within six weeks of receiving his trademark registrations. (ECF No. 13 at 10.) This misunderstands his obligations as an alleged holder of trade dress rights. If Blazer possesses trade dress rights, he had those rights independent of any confirmation from the USPTO. Indeed, trademark registration provides a rebuttable presumption of validity for trade dress rights, it does not create those rights or indicate when those rights arise. *See* 15 U.S.C. § 1057(b); *see also Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996). Blazer filed applications for his trade dress just months after signing the Settlement Agreement with Best Bee Brothers. He then remained silent for another two years before raising his alleged trade dress rights with Amazon (without notifying Best Bee Brothers). Amazon responded by removing numerous Best Bee Brothers products from its platform, causing Best Bee Brothers substantial economic injury. This injury would not have occurred if Blazer had not delayed.

The last element, undue prejudice, is also met, for the reasons discussed above. Accordingly, the Court finds that Best Bee Brothers has shown a likelihood of success on its defense of acquiescence as well.

### D. Though the Circumstances Are Suspect, the Court Cannot Yet Rule on Whether Blazer Engaged in Fraud.

Fraud when registering a trademark "occurs when an applicant knowingly makes false, material representations of fact in connection with its application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)). The party alleging fraud must present "clear and convincing evidence" establishing a "deliberate attempt to mislead the [USPTO] into registering the mark." *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982) (citations omitted).

In applying for trade dress registration, Blazer submitted a declaration under penalty of perjury averring that, to the best of his knowledge and belief, "no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." (ECF No. 10-1 at 11.) Best Bee Brothers submits that this declaration was fraudulent, because Blazer had entered into the Settlement Agreement months earlier and had consented to Best Bee Brothers' sale of trap designs embodying the trade dress that

he sought to register. (ECF No. 7 at 17–18.) It argues that, at the time of submitting his declarations, Blazer knew that Best Bee Brothers was using the rectangular and trapezoidal designs in its old and new designs and that Blazer's statement that "no other persons . . . have the right to use the mark in commerce" was false. (*Id.*)

Blazer responds that his declaration was made in good faith and disputes that Best Bee Brothers have the "right" to use the mark in commerce. (ECF No. 13 at 11–12.) The Court finds the circumstances surrounding the trade dress claim and the timing of Blazer's statement suspect. It is difficult to see how Blazer could know that Best Bee Brothers was selling four designs, all of which embody his supposed trade dress, yet also tell the USPTO that no one else had the right to use the trade dress. But fraud requires proof of intent and is subject to the clear and convincing evidence standard. *Money Store*, 689 F.2d at 670 (citations omitted). Given the ample evidence supporting Best Bee Brothers' likelihood of success on their other affirmative defenses, the Court will decline to reach the issue of whether Blazer committed fraud on the USPTO. This is an issue better suited for resolution during a trial on the merits.

## II. Best Bee Brothers Has Shown That It Is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction.

"Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered." *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022) (citation omitted). Best Bee Brothers argues that its harm is irreparable because it is losing sales, not just on the suspended products, but on other products as well. (ECF No. 7 at 19.) Because Best Bee Brothers' Amazon Health Rating has declined, it contends, all the products it sells on Amazon are affected. (*Id.*) Because Blazer's takedown notices have hurt its Health Rating, the notices have also had a negative effect on the searchability of all of its products. (*Id.*) Best Bee Brothers thus maintains that it is being harmed because its other products (bug repellants, bug zappers, decoy nests, and more) are less likely to appear at the top of an Amazon search, thereby decreasing sales of those products, which are otherwise unrelated to this lawsuit. (*Id.* at 19–20.) Best Bee Brothers further argues that its clients are similarly losing out on sales, which negatively impacts both its own and its clients' goodwill and reputation. (*Id.* at 20.)

Blazer disputes that Best Bee Brothers has suffered irreparable harm. He insists that any financial harm that Best Bee Brothers suffers can be remedied by money damages, if it prevails on its claims in this lawsuit. Blazer argues that Best Bee Brothers can quantify its lost sales based on

prior years' experience and recover any lost profits. (ECF No. 13 at 12.) Blazer dismisses Best Bee Brothers' contentions of economic hardship and argues the company can still sell a variety of other products on Amazon and all its products are available on other online marketplaces. (*Id.* at 12–13.)

The Court concludes that Best Bee Brothers has sufficiently demonstrated irreparable harm. It is generally true that harm stemming from lost customers is not irreparable if the lost customers can be identified. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545–46 (7th Cir. 2021). But courts have long acknowledged that when it would be difficult to pin down "what business has been or will be lost," the injury can be considered irreparable for injunctive relief purposes. *See Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005). Best Bee Brothers persuasively argues that its Amazon sales fall into this category. Given the nature of bee trap sales, Best Bee Brothers does not consistently sell to the same customers for the same amount every year. It offers its carpenter bee traps for sale on Amazon, where a wide variety of persons and businesses can buy them. While it may be able to estimate lost sales based on prior years' experience, this will be difficult and only approximate the losses to its business that it is currently experiencing as a result of Amazon's suspension of its products. Further, Best Bee Brothers also credibly claims it will suffer a loss of goodwill and reputation. Best Bee Brothers contends that its business clients are also losing sales, necessarily impacting Best Bee Brothers' relationships with those clients and negatively affecting its reputation and goodwill. Those losses can also constitute irreparable harm. *See Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012).

In weighing the second injunctive relief factor, the Court finds that Best Bee Brothers has shown sufficient irreparable harm to warrant issuance of a preliminary injunction.

### III. The Balance of Equities Tips in Best Bee Brothers' Favor Over Blazer's.

The irreparable harm to Best Bee Brothers must be weighed against any harm to Blazer. *See Cassell*, 990 F.3d at 545 (citation omitted). Best Bee Brothers argues that the balance of the harm weighs in its favor. Best Bee Brothers is unable to sell its carpenter bee traps during peak selling season, and its other products are affected by the decrease in its Amazon Health Rating. (ECF No. 7 at 22.) Further, Best Bee Brothers argues that the loss of sales impacts its client relationships, damaging its reputation and goodwill. (*Id.*) On the other side of the scale, Best Bee Brothers argues that Blazer can recoup any damages from the company's violation of his rights if

he prevails on his trade dress claim. (*Id.* at 23.) In response, Blazer argues that the harm to Best Bee Brothers is not greater than the harm he will suffer from the grant of an injunction. Blazer minimizes Best Bee Brothers' harm, insisting it is able to sell its unimpacted products on Amazon without injunctive relief. (ECF No. 13 at 13–14.) He also emphasizes the fact-intensive nature of Best Bee Brothers' defenses and urges the Court not to order preliminary injunctive relief in the absence of a detailed review of the underlying facts.

The Court agrees with Best Bee Brothers. The company's inability to sell its products and the loss of sales for products unrelated to the complaint have significant ramifications, including affecting client relations. Further, should Blazer prevail on his underlying trade dress claim, he would recover damages and could, at least potentially, seek disgorgement of profits. *See* 15 U.S.C. § 1117(a). If disgorgement is allowed, Blazer would be better off if Best Bee Brothers maximizes its sales. The harm to Blazer by allowing Best Bee Brothers to sell the suspended products is, therefore, minimal. In the overall balancing of harms, the scales of justice weigh in favor of granting an injunction to Best Bee Brothers.

## IV. An Injunction Weighs in Favor of Public Interest.

The final injunctive relief factor requires consideration of the public interest. As the Seventh Circuit has explained, the irreparable harm to Best Bee Brothers must be weighed against any harm that would fall to the people and institutions that are not party to the case if an injunction were granted. *See Cassell*, 990 F.3d at 545 (citation omitted). Best Bee Brothers argues that an injunction weighs in favor of the public interest because Blazer has circumvented the court process by taking his trade dress arguments straight to Amazon. (ECF No. 7 at 23.) It also argues that the public interest favors due process rights, which require an adjudication of Blazer's asserted trade dress rights in court, rather than a short-circuited adjudication through the Amazon takedown process. (*Id.*) In response, Blazer defends his use of the Amazon takedown process and notes that the platform offers an appeals process through which Best Bee Brothers can pursue its defenses to his assertion of his trade dress rights. (ECF No. 13 at 14.)

The Court finds that the public interest, to the extent applicable, weighs in favor of granting injunctive relief. While Amazon may offer a process to resolve trade dress disputes, that process is not subject to the due process requirements of a federal court proceeding. Indeed, Amazon is a private business guided by its own need to generate profits for its shareholders. While those interests may, in the long run, align with providing its vendors with adequate procedural

protections, there is no guarantee that the adjudication will protect equally both parties to this dispute. The public has an interest in both parties to this dispute having their rights adjudicated consistent with due process in this Court. And there is no harm to Blazer in having a formal determination of his trade dress rights in the proper federal forum. To preserve the status quo, while those rights are being determined, the public interest supports entry of a preliminary injunction.

V.　　In Lieu of a Bond, Best Bee Brothers Must Place All Proceeds from Allegedly Infringing Products in Escrow.

Given that Best Bee Brothers has demonstrated a likelihood of success on the merits, irreparable harm, that the balance of equities tips in its favor, and that public interest favors an injunction, the Court will grant its motion for a preliminary injunction. The Federal Rules of Civil Procedure provide that a Court may issue a preliminary injunction "*only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). Best Bee Brothers asks the Court to waive this requirement, however, insisting that Blazer will not suffer harm if Best Bee Brothers is allowed to continue to sell the affected products while the merits of the parties' claims are adjudicated. (ECF No. 7 at 23–24.) Best Bee Brothers cites *Faust v. Vilsack*, 519 F.Supp.3d 470 (E.D. Wis. 2021), which it claims supports its position. (*Id.*) Blazer has not offered any calculations or other evidence concerning the amount of bond that should be required but insists that the Court should order Best Bee Brothers to provide a bond if an injunction is imposed. (ECF No. 13 at 14.)

*Faust* is not directly analogous. *Faust* involved a request to enjoin the United States Department of Agriculture from implementing a loan-forgiveness program that allegedly violated the plaintiffs' equal protection rights. 519 F.Supp.3d at 473. The Court declined to impose a bond because the defendants did not request one and provided no evidence they would suffer financial loss from a temporary restraining order. *Id.* at 478. Unlike *Faust*, this case does not involve a claim against the government seeking to hold a statute unconstitutional. Indeed, Blazer's underlying claim here, for trade dress infringement, is, unlike the claim in *Faust*, fundamentally monetary. Moreover, unlike the defendant in *Faust*, Blazer has affirmatively requested a bond.

The Court notes, however, that the underlying claim here is for declaratory judgment, and thus, the parties are sitting in reverse positions. Blazer is the holder of the alleged trade dress

rights, and had he gone to court to enforce those rights against Best Bee Brothers, rather than engaging in self-help by demanding that Amazon takedown the offending traps, the parties' positions would be reversed. Blazer would then be in the position of seeking a preliminary injunction to remove Best Bee Brothers' Amazon listings. Given the procedural posture and Blazer's failure to offer specifics on a potential bond, the Court will use its equitable power to order that Best Bee Brothers place into escrow all proceeds from sales of products received as a result of the injunction. This arrangement should provide Blazer with the functional equivalent of a bond, while allowing Best Bee Brothers to resume selling the disputed products and with the profits then being made available should Blazer ultimately succeed in supporting his claim. The Court will direct counsel for the parties to meet and confer on the logistics necessary to set up and maintain this escrow account.

## CONCLUSION

Best Bee Brothers has demonstrated a likelihood of success on the merits of its claims that Blazer's trade dress rights are unenforceable as to it under the affirmative defenses of naked licensing, laches, and acquiescence. Best Bee Brothers has also demonstrated that, without a preliminary injunction, it will suffer irreparable harm and the balance of equities weighs in its favor. Accordingly, the Court will enjoin Blazer from maintaining his takedown notices with Amazon. The Court will also order that Blazer withdraw his current takedown notices with Amazon, and the Court will enjoin Blazer from filing any new trade dress takedown notices with Amazon. Accordingly,

**IT IS HEREBY ORDERED** that Best Bee Brothers' Motion for Preliminary Injunction, ECF No. 6, is **GRANTED**. Blazer is enjoined from maintaining his takedown notices with Amazon for the following products:

- B0DY452C6B
- B0DVBNZCNC
- B0DP277KNL
- B0DVBV1X4H
- B0DVBTMDVX
- B0DP27BKY5
- B0CBNGGMCY
- B0CBNDZQSK
- B0CBNDYJWC
- B0CBNDLDPW
- B0BZSRJ224

- B0BZSRFMG2
- B0BZSQNKGL
- B0CD2BM8S6
- B0CD2F897P
- B0CD2CZBK1
- B0CD2FHMPL
- B0CD2DQLW4
- B0CD2D1XYC

Blazer must also withdraw any takedown notices from Amazon based on alleged trade dress infringement by Best Bee Brothers for the above-identified products. Blazer is further enjoined from filing any additional takedown notices against Best Bee Brothers for alleged trade dress infringement with Amazon. Consistent with Fed. R. Civ. P. 65(d)(1), a separate order detailing the terms of the injunctive relief granted will be entered. *See MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019).[6]

**IT IS FURTHER ORDERED** that the proceeds from the sales of all products using Blazer's purported trade dress rights and identified by the ASINs listed above, must be placed in escrow pending the outcome of the case.

Dated at Milwaukee, Wisconsin on April 23, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[6] This relief is entered on a preliminary basis only.